TURNER v AUTO CLUB INSURANCE ASSOCIATION

Docket Nos. 97016, 97032. Argued October 6, 1994 (Calendar Nos. 14-15). Decided February 22, 1995.

Mead W. Turner and other owners and insurers of a building destroyed as a result of a multivehicle collision brought actions in the Oakland Circuit Court against Auto Club Insurance Association, Royal Insurance Company of America, and League General Insurance Company, seeking no-fault property protection benefits. The damages were caused when a suspected stolen vehicle being pursued by City of Ferndale police ignored a red signal, struck a pickup truck, and collided with another truck that crashed into the building, causing the building to catch fire. The police vehicle was not involved in any collisions. Auto Club, the insurer of the owner of the truck, filed a third-party complaint against the city, claiming that, as a self-insurer, the city was liable to pay a share of the property protection benefits. League General, the insurer of the owner of the pickup truck, and ACIA conceded liability for a one-quarter pro-rata share of such benefits. Royal, the insurer of the owner of the stolen vehicle, denied liability, arguing that under § 3121(1), the damage could not be said to have arisen out of the ownership, operation, maintenance, or use of its insured's motor vehicle as a motor vehicle because a thief had been operating the vehicle when the accident occurred. The city denied liability, claiming that under § 3125, the police car was not involved in the accident. The court, Barry L. Howard, J., granted ACIA's motion for summary disposition against Royal and denied ACIA's motion for summary disposition against the city. The Court of Appeals, REILLY, P.J., and MICHAEL J. KELLY and CAVANAGH, JJ., affirmed both decisions (Docket No. 130295). Royal and ACIA appeal.

In an opinion by Justice CAVANAGH, joined by Chief Justice BRICKLEY, and Justices LEVIN, BOYLE, RILEY, and MALLETT, the Supreme Court held:

Royal Insurance Company and the City of Ferndale are

REFERENCES

Am Jur 2d, Automobile Insurance §§ 351, 366-368.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

primarily liable to pay a share of property protection benefits because their insureds' vehicles were involved in the accident that arose out of the use of a motor vehicle as a motor vehicle.

1. Under §§ 3121-3127 of the no-fault act, an insurer will be liable to pay property protection benefits if (1) there has been accidental damage to tangible property that arose out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle; (2) enumerated exceptions do not apply; and (3) the insurer insures the owner of a vehicle involved in the accident, in which case the insurer will be primarily liable, or the insurer insures the operator of a vehicle involved in the accident, in which case the insurer will be secondarily liable.

2. To establish that the property damage arose out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, the causal relationship between the damage and the use of the vehicle must be more than incidental, fortuitous, or but for, and the vehicle's connection with the injury must be directly related to its character as a motor vehicle. In this case, the property damage arose out of the use of the truck as a motor vehicle.

3. The exceptions for liability under the no-fault act are not implicated in this case. Coverage for property protection benefits on the basis that a thief was driving the insured's vehicle when the accident occurred is not precluded; similarly, the Legislature did not articulate any exception for insured police cars. The fact that the Royal and Ferndale insureds are innocent of any wrongdoing is not grounds for an exemption from no-fault liability in light of the clear and unequivocal language of § 3121(2) directing that property protection benefits be paid without regard to fault.

4. In a multivehicle accident, a vehicle may be involved under § 3125 if it actively contributed to the accident and even though the damage could not be said to have arisen out of the ownership, operation, maintenance, or use of that vehicle. Physical contact is not required to establish involvement, nor is fault a relevant consideration. However, merely showing a "but for" connection between the operation or use of the motor vehicle as a motor vehicle and the damage is not enough. In this case, both the stolen vehicle and the police vehicle were involved in the accident for purposes of § 3125. The thief was using the stolen vehicle as a motor vehicle when he collided with the truck and caused it to crash into and damage the building, i.e., the stolen vehicle made an active contribution to the accident. Likewise, the police officer was using his vehicle

as a motor vehicle as he pursued the stolen vehicle, perpetuating its flight and resulting in the collision and the property damage. Thus, both Royal Insurance and the City of Ferndale are primarily liable to pay a pro-rata share of the property protection benefits.

Affirmed in part, reversed in part, and remanded.

Justice WEAVER took no part in the decision of this case.

198 Mich App 650; 499 NW2d 434 (1993) affirmed in part and reversed in part.

1. INSURANCE — NO-FAULT — PROPERTY PROTECTION BENEFITS — LIABILITY OF INSURERS.

Under §§ 3121-3127 of the no-fault act, an insurer will be liable to pay property protection benefits if (1) there has been accidental damage to tangible property that arose out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle; (2) enumerated exceptions do not apply; and (3) the insurer insures the owner of a vehicle involved in the accident, in which case the insurer will be primarily liable, or the insurer insures the operator of a vehicle involved in the accident, in which case the insurer will be secondarily liable (MCL 500.3121[1], 500.3123, 500.3125; MSA 24.13121[1], 24.13123, 24.13125).

2. INSURANCE — NO-FAULT — INVOLVEMENT IN ACCIDENTS.

In a multivehicle accident, a vehicle may be involved for purposes of the no-fault act if it actively contributed to the accident and even though the damage did not arise out of the ownership, operation, maintenance, or use of that vehicle; physical contact is not required to establish involvement, nor is fault a relevant consideration; however, merely showing a "but for" connection between the operation or use of the motor vehicle as a motor vehicle and the damage is not enough to establish involvement (MCL 500.3125; MSA 24.13125).

*Hanlon, Becker, Lanctot, McCutcheon, Schoolmaster & Taylor* (by *James H. Schoolmaster*); (*John A. Lydick,* of counsel), for Auto Club Insurance Association.

*Pasquale Ciccodicola* and *Ralph H. Adams* for Royal Insurance Company of America.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Gail P. Massad*), for the City of Ferndale.

CAVANAGH, J. This consolidated case involves a dispute between no-fault insurers[1] regarding their respective liabilities for property protection benefits for property damage that resulted from a multivehicle accident. We conclude that the insurers who denied liability are primarily liable for no-fault property protection benefits because their insureds' vehicles were "involved in the accident" that arose out of the use of a motor vehicle as a motor vehicle. MCL 500.3121(1); MSA 24.13121(1); MCL 500.3125; MSA 24.13125. The Court of Appeals opinion is affirmed in part and reversed in part.

### FACTS AND PROCEDURAL HISTORY

The facts of this case are not in dispute. A thief "hot-wired" Columbus Bone, Sr.'s, car as it was parked at a private residence. The next morning, while the thief was driving the stolen vehicle northbound on Woodward Avenue, a City of Ferndale police officer patrolling the area observed that the vehicle was running without keys in its ignition. Suspecting that the vehicle had been stolen, the officer activated his overhead lights and signaled the driver to pull over. The thief ignored this direction, and instead accelerated, continuing north on Woodward. The officer followed in quick pursuit.

The chase lasted for about half a mile, at which point the cars approached the intersection of Woodward and Nine Mile Road. The officer saw that the traffic signal for Woodward was red and slowed down, hoping to deter the stolen vehicle from disregarding the red light. The driver still

[1] The City of Ferndale is a third-party defendant/appellee in this suit. For purposes of our decision, we regard the city to be its own no-fault insurer. While the city disputes its status as a self-insurer, the lower courts did not rule on that issue, and we do not express any opinion concerning it here.

ignored the signal and proceeded through the intersection, resulting in a multivehicle collision.

First, the vehicle crashed into a pickup truck driven by its owner, Clinton Durfee, on eastbound Nine Mile. Next, the vehicle collided with a truck driven by its owner, Randy Leroy Lemons, also on eastbound Nine Mile. The impact of this crash caused the truck to split in two. The rear portion of the truck smashed into a nearby building on the northeast corner of Woodward and Nine Mile. The truck's gas tank exploded, the building caught on fire, and both the building and its contents were destroyed. The police vehicle did not collide with any of the other vehicles, nor did it incur any damage.

The owners and insurers of the building sought no-fault property protection benefits from the insurers of the owners of the truck, the pickup truck, and the stolen vehicle. Auto Club Insurance Association (ACIA), the insurer of the owner of the truck, also filed a third-party complaint against the City of Ferndale, claiming that the allegedly self-insured Ferndale was liable for a share of the property protection benefits.

The insurers disagreed about their respective liabilities. League General Insurance Company, the insurer of the owner of the pickup truck, and ACIA conceded liability for a one-quarter pro-rata share of payable property protection benefits. Royal Insurance Company, the insurer of the owner of the stolen vehicle, denied liability, arguing that under § 3121(1) of the no-fault act, the damage could not be said to have arisen out of the ownership, operation, maintenance, or use of its insured's motor vehicle as a motor vehicle because a thief had been operating the vehicle when the accident occurred. Ferndale also denied liability,

claiming that under § 3125 of the no-fault act, the police car was not "involved in the accident . . . ."

The insurers filed cross-motions for summary disposition of the liability issue. The trial court granted ACIA's motion for summary disposition against Royal, ruling that Royal was liable for a share of property protection benefits. However, it denied ACIA's motion for summary disposition against Ferndale, ruling that Ferndale was not liable for a share of property protection benefits. The Court of Appeals[2] affirmed both decisions.

Royal and ACIA applied for leave to appeal in this Court. We granted both applications and consolidated the appeals.

I

Our basic task in this case is to interpret sections of the no-fault statute pertaining to property protection benefits. The rules governing interpretation of statutes are well established. The cardinal rule of statutory construction is to identify and to give effect to the intent of the Legislature. *Mull v Equitable Life Assurance Society of the United States,* 444 Mich 508, 514, n 7; 510 NW2d 184 (1994); *Coleman v Gurwin,* 443 Mich 59, 65; 503 NW2d 435 (1993). The first step in ascertaining such intent is to focus on the language in the statute itself. *Thornton v Allstate Ins Co,* 425 Mich 643, 648; 391 NW2d 320 (1986). If the statutory language is certain and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. *Mull* and *Coleman, supra.*

Where the meaning of statutory language is not clear, judicial construction becomes necessary. Courts are to accord statutory words their ordinary and generally accepted meaning. *Id.* More-

---

[2] 198 Mich App 650; 499 NW2d 434 (1993).

over, when courts interpret a particular phrase in a statute, they must, whenever possible, construe the phrase in such a way that the interpretation does not conflict with, or deny effect to, other portions of the statute. *Grand Rapids v Crocker,* 219 Mich 178, 182-183; 189 NW 221 (1922). Finally, when courts interpret the no-fault act in particular, they are to remember that the act is remedial in nature and must be liberally construed in favor of the persons intended to benefit from it. *Gobler v Auto-Owners Ins Co,* 428 Mich 51, 61; 404 NW2d 199 (1987).

II

The provisions of the no-fault act dealing with property protection benefits are §§ 3121-3127. Generally, a no-fault insurer will be liable to pay property protection benefits if the three following requirements are met:

1.  There has been "accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle . . . ." Section 3121(1).[3]

2.  The facts do not implicate any of the statu-

---

[3] At the outset of the instant litigation, § 3121(1) provided:

> Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 3125, and 3127. [MCL 500.3121(1); MSA 24.13121(1).]

Section 3121(1) has since been amended by 1993 PA 290. The amendment is not relevant to the facts in this case, and, therefore, we do not include it here.

torily enumerated exceptions for property protection liability. Section 3123.[4]

3. The insurer insures the owner of a vehicle "involved in the accident," in which case the insurer will be primarily liable; or, the insurer insures the operator of a vehicle "involved in the accident," in which case the insurer will be secondarily liable. Section 3125.[5]

When two or more insurers are liable for property protection benefits in the same order of priority, benefits are paid by insurers in a manner that

---

[4] (1) Damage to the following kinds of property is excluded from property protection insurance benefits:

(a) Vehicles and their contents, including trailers, operated or designed for operation upon a public highway by power other than muscular power, unless the vehicle is parked in a manner as not to cause unreasonable risk of the damage which occurred.

(b) Property owned by a person named in a property protection insurance policy, the person's spouse or a relative of either domiciled in the same household, if the person named, the person's spouse, or the relative was the owner, registrant, or operator of a vehicle involved in the motor vehicle accident out of which the property damage arose.

(2) Property protection insurance benefits are not payable for property damage arising from motor vehicle accidents occurring outside the state.

(3) Property protection insurance benefits are not payable for property damage to utility transmission lines, wires, or cables arising from the failure of a municipality, utility company, or cable television company to comply with the requirements of section 16 of Act No. 368 of the Public Acts of 1925, being section 247.186 of the Michigan Compiled Laws. [MCL 500.3123; MSA 24.13123.]

[5] A person suffering accidental property damage shall claim property protection insurance benefits from insurers in the following order of priority: insurers of owners or registrants of vehicles involved in the accident; and insurers of operators of vehicles involved in the accident. [MCL 500.3125; MSA 24.13125.]

accomplishes an equitable distribution of loss among the insurers. Section 3127.[6]

Property protection benefits are distinguishable from personal protection benefits (PIPS) because, among other things, property protection benefits provide third-party protection, whereas PIPS provide first-party protection. In other words, when a person's property has been damaged because of a motor vehicle, he does not look first to his own no-fault insurer for recovery, but, rather, to the "insurers of owners or registrants of vehicles involved in the accident . . . ." Section 3125. In contrast, when a person suffers injuries because of a motor vehicle, he generally looks first to his own no-fault insurer for recovery. See §§ 3114(1) and 3115(1). A significant exception to the general liability scheme exists with regard to property protection benefits where the property that has been damaged is a moving motor vehicle. In that situation, the damaged property owner *does* look to his own no-fault insurer for recovery, provided he has purchased optional collision protection. See § 3123(1)(b).

---

[6] The provisions for distribution of loss and for reimbursement and indemnification among personal protection insurers as set forth in subsection (2) of section 3115 and in section 3116 also applies to property protection insurers. [MCL 500.3127; MSA 24.13127.]

Section 3115(2) provides:

When 2 or more insurers are in the same order of priority to provide personal protection insurance benefits an insurer paying benefits due is entitled to partial recoupment from the other insurers in the same order of priority, together with a reasonable amount of partial recoupment of the expense of processing the claim, in order to accomplish equitable distribution of the loss among such insurers. [MCL 500.3115(2); MSA 24.13115(2).]

Section 3116 addresses reimbursement and indemnification schemes among insurers regarding tort claims, and, accordingly, is not a pertinent consideration in this case. MCL 500.3116; MSA 24.13116.

In this case, the damaged property owners and their insurers seek third-party property protection benefits from the insurers of the owners of four vehicles that were present at the accident scene. Two of the insurers already have admitted responsibility. We conclude that the other two insurers, Royal and Ferndale, are also liable for a share of property protection benefits because the facts presented satisfy each of the aforementioned requirements.

A

The accidental damage to the building in this case arose out of the use of a motor vehicle as a motor vehicle, thereby making the damaged property owners and insurers eligible for property protection benefits under § 3121(1).

We examined what is meant by the language "arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle" under no-fault law in *Thornton, supra.* While the specific no-fault benefits at issue in *Thornton* were PIPS, our analysis in *Thornton* of the causal nexus that must exist between the injury and the motor vehicle equally applies to property protection benefits.[7]

In *Thornton,* we adopted several criteria to be used to assess whether the requisite causal connec-

---

[7] The causal nexus prerequisite for PIPS is almost identical to the one required for property protection benefits. The nexus requirement for PIPS is set forth in § 3105(1).

Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter. [MCL 500.3105(1); MSA 24.13105(1).]

tion between the injury and the motor vehicle was sufficient to trigger no-fault benefits. The primary consideration in the causation analysis "must be the relationship between the injury and the vehicular use of a motor vehicle." *Thornton, supra* at 659-660. In addition, the relationship between the use of the vehicle as a motor vehicle and the injury must be "more than incidental, fortuitous, or 'but for,' " and the vehicle's connection with the injury should be " 'directly related to its character as a motor vehicle.' " *Id.* at 659. On the basis of the particular facts in *Thornton,* we concluded that the requisite causal nexus had not been established, emphasizing that "[t]he motor vehicle was not the instrumentality of the injuries," and that "the injury could have occurred whether or not [the claimant] used a motor vehicle as a motor vehicle."[8] *Thornton, supra* at 660.

Applying the criteria from *Thornton* to the facts of this case, we conclude that the property damage arose out of the use of a motor vehicle as a motor vehicle. Specifically, we hold that the destruction of the building arose out of the use of the *truck* as a motor vehicle. The truck was the vehicle that crashed into the building, and the truck's gas tank caused the building to catch fire and sustain serious damage. Seconds before the accident, the driver of the truck was using it for transportation purposes—an activity that is "directly related to [the truck's] character as a motor vehicle." *Thorn-*

---

[8] The claimant in *Thornton* sought PIP benefits for injuries he sustained during an armed robbery while he was driving his taxicab. We determined that the motor vehicle was "merely the situs of the armed robbery" and that the "relation between the functional character of the motor vehicle and [the] injuries was not direct—indeed, the relation [was] at most incidental." *Thornton, supra* at 660. Because the injuries did not arise out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, as is required under § 3105(1), we concluded that the claimant was not eligible for PIPs.

*ton, supra* at 659. This functional use of the truck cannot be said to have a merely "incidental," "fortuitous," or "but for" connection with the damage: because the truck crashed into the building, it acted as "the instrumentality of the injuries." *Thornton, supra* at 660.

On the basis of the above, we find that the relationship between the use of the truck and the damage was direct for purposes of no-fault law. We consider irrelevant the fact that at the precise moment the truck smashed into the building it was not being used as a motor vehicle because it was cut in half. Suppose a vehicle was being used for transportation purposes seconds before colliding with another vehicle, causing the first vehicle to roll over consecutively and ultimately to hit a pedestrian. The fact that the car was rolling, rather than being used as a motor vehicle, seconds before hitting the pedestrian likewise would lead us to conclude that the injury arose out of the use of the first vehicle as a motor vehicle.

Both Royal and Ferndale argue that they are not liable for property protection benefits because the damage here cannot be said to have arisen out of the use of their particular insured's vehicle as a motor vehicle. We reject this argument because we disagree with its premise that, in a multivehicle accident situation, each insurer's liability for property protection benefits turns on whether the damage arose out of the use of the *insured's* vehicle as a motor vehicle.[9]

---

[9] We similarly reject Royal's more specific contention that it is not responsible because the damage did not arise out of the ownership, operation, maintenance, or use of its insured's vehicle *by its insured.* The clear language in § 3121(1) does not include any requirement that an insured be the person operating, maintaining, or using the vehicle when the accident happens. Royal confuses the requirement under § 3121(1) with the requirement under § 3163(1), which sets forth the circumstances under which an out-of-state insured is entitled to no-

While § 3121(1) refers to an insurer's liability, the section primarily encompasses the threshold requirement that claimants must satisfy to be eligible for property protection benefits: showing that the damage arose out of "the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle . . . ." Once that is established, the damage fits within the purview of the no-fault statute, and the claimant is entitled to no-fault coverage. In a single vehicle accident, the primary liability of the insurer of the owner of the single vehicle physically connected to the accident *will* turn on whether the claimant can establish that the damage arose out of the ownership, operation, maintenance, or use of the *insured's* vehicle as a motor vehicle. The claimant is not entitled to coverage unless the causal nexus is established, and the insured's vehicle is the only possible vehicle available to demonstrate the required nexus.

However, in a multivehicle accident, the liability of each insurer of an owner of a vehicle having some physical connection with the accident *will not* turn on whether the claimant can establish

fault benefits. Section 3163(1) expressly requires that the insured be the person who operates, maintains, or uses the vehicle as a motor vehicle when the accident occurs:

> An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle *by an out-of-state resident who is insured* under its automobile liability insurance policies, shall be subject to the personal and property protection insurance system set forth in this act. [MCL 500.3163(1); MSA 24.13163(1). Emphasis added.]

The qualifying language in § 3163 regarding an out-of-state insured's participation in the accident is conspicuously absent from the language in § 3121. We will not contravene the Legislature's intent to omit the limitation when it drafted § 3121(1) by construing the section in the way that Royal advances.

that the damage arose out of the ownership, operation, maintenance, or use of *each insured's* vehicle as a motor vehicle. Section 3121(1) only requires that the claimant be able to show that the damage arose out of "the ownership, operation, maintenance, or use of *a* motor vehicle as a motor vehicle." (Emphasis added.) Once that showing is made with respect to *one* motor vehicle, the insurers of owners of vehicles having some physical connection to the accident are potentially primarily liable for property protection benefits. Whether such insurers in fact will be found primarily liable will turn on whether any exceptions for liability exist under § 3123, and whether the insureds' vehicles were "involved in the accident" under § 3125. A vehicle may be "involved in the accident" even though the damage cannot be said to have arisen out of the ownership, operation, maintenance, or use of *that* vehicle.

In other words, in this multivehicle accident, even if we were to accept Royal and Ferndale's claim that the damage did not arise out of the use of their insureds' vehicles as motor vehicles, Royal and Ferndale are not necessarily relieved of liability. Because the damage arose out of the use of a motor vehicle (the truck) as a motor vehicle, and because the insureds' vehicles had more than a random association with the accident scene, Royal and Ferndale may be primarily liable for property protection benefits. Whether they in fact will be found liable will depend on the outcome of analyses under §§ 3123 and 3125.[10]

[10] Both Ferndale and the Court of Appeals rely on the holdings in *Sanford v Ins Co of North America,* 151 Mich App 747; 391 NW2d 473 (1986), and *Peck v Auto-Owners Ins Co,* 112 Mich App 329; 315 NW2d 586 (1982), to support the proposition that Ferndale is not liable for property protection benefits. Reliance on these cases is misplaced because both dealt with single motor vehicle accidents in which the claimants' only chance of collecting benefits hinged on showing that

B

The facts in this case do not implicate any of the exceptions for property protection liability under the no-fault act.

The Legislature did not choose to preclude coverage for property protection benefits on the basis that a thief was driving the insured's vehicle when the accident occurred. That the Legislature contemplated the car-thief scenario when it drafted the no-fault act is made manifest by the existence of § 3113(a).[11] Section 3113(a) provides that insurers do not have to pay PIPs to a car thief who incurs injuries in a motor vehicle accident. Because the Legislature did not incorporate any type of exception for the car-thief situation with respect to property protection benefits, we will not recognize one for the facts in this case.

Similarly, the Legislature did not articulate any coverage exception for insured police cars, making it inappropriate for us to create one now. The fact that both the Ferndale and Royal insureds are innocent of any wrongdoing is not grounds for an exemption from no-fault liability in light of § 3121(2)'s direction that property protection bene-

the use of the single motor vehicle (the police car) as a motor vehicle gave rise to the claimant's injuries under § 3105(1). Because this is a multivehicle accident situation, and the facts establish that the damage arose out of the functional use of a motor vehicle as a motor vehicle (the motor vehicle not being the police car), the primary liability of the insurer of the police car turns on whether the police car was "involved in the accident" under § 3125. While recognizing that *Peck* and *Sanford* are factually distinguishable from the instant case, we decline to express an opinion concerning the holdings and reasoning in *Peck* and *Sanford* at this time.

[11] A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

(a) The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle. [MCL 500.3113; MSA 24.13113.]

fits are to be paid "without regard to fault."[12] We would violate basic rules of statutory construction if we ignored the Legislature's clear and unequivocal language in this regard.

C

Royal and Ferndale are primarily liable for a share of property protection benefits because both their insured's vehicles were "involved in the accident" according to our construction of that phrase as it is used in § 3125.

While the phrase appears in several provisions throughout the no-fault act,[13] it is not defined in the act. In *Heard v State Farm Mutual Automobile Ins Co,* 414 Mich 139; 324 NW2d 1 (1982), we examined its meaning as it is used in § 3113(b).[14] Section 3113(b) provides that an injured person will not be entitled to PIPS if such person was the owner or registrant of an uninsured motor vehicle or motorcycle that was "involved in the accident."

In construing the phrase in *Heard,* we observed that "[w]hether a vehicle is 'involved' cannot be determined by abstract reasoning or resort to dictionary definitions. It depends on the meaning derived from the purpose and structure of the no-

---

[12] Property protection insurance benefits are due under the conditions stated in this chapter without regard to fault. [MCL 500.3121(2); MSA 24.13121(2).]

[13] The language "involved in the accident" appears in §§ 3111, 3113(b), 3114(5), 3115(1), 3123(1)(b), 3125, and 3135(2)(c).

[14] A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following existed:

The person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by section 3101 or 3103 was not in effect. [MCL 500.3113(b); MSA 24.13113(b).]

fault act." *Heard, supra* at 147. For a vehicle to have been "involved in the accident" requires, at a minimum, that the vehicle be used as a motor vehicle at the time of the accident.[15] Further, a vehicle does not fit within the category of vehicles "involved in the accident" merely on a showing of a "but for" connection between the functional use of the motor vehicle and the injury—even where a "but for" standard is narrowed by interposing a requirement of physical proximity between the use of the vehicle as a vehicle and the injury or damage.[16]

Since *Heard,* several panels of the Court of Appeals also have examined the import of the phrase "involved in the accident" in the context of various no-fault sections,[17] but not the sections

---

[15] *Id.* at 148.

[16] *Id.*

[17] For cases that examine the meaning of the phrase as it is used in the context of a specific no-fault section, see, e.g., *Michigan Mutual Ins Co v Farm Bureau Ins Group,* 183 Mich App 626; 455 NW2d 352 (1990); *Hastings Mutual Ins Co v State Farm Ins Co,* 177 Mich App 428; 442 NW2d 684 (1989); *Wright v League General Ins Co,* 167 Mich App 238; 421 NW2d 647 (1988); *Brasher v Auto Club Ins Ass'n,* 152 Mich App 544; 393 NW2d 881 (1986); *Bachman v Progressive Casualty Ins Co,* 135 Mich App 641; 354 NW2d 292 (1984); *Stonewall Ins Group v Farmers Ins Group,* 128 Mich App 307; 340 NW2d 71 (1983). ·

We note that several other Court of Appeals panels may have inadvertently created confusion by their use of the word "involvement" and its derivatives to analyze whether the claimant has satisfied the threshold eligibility requirement for PIP no-fault benefits under § 3105(1). See, e.g., *Dep't of Social Services v Auto Club Ins Ass'n,* 173 Mich App 552, 557; 434 NW2d 419 (1988) (stating "no iron-clad rule can be discerned as to what involvement is sufficient under MCL 500.3105; MSA 24.13105"); *Sanford,* n 10 *supra* at 750 (explaining what is "[t]he generally followed test for whether an accident involves a motor vehicle" in reference to § 3105[1]); and *Peck,* n 10 *supra* at 332 (addressing "whether a motorcyclist fleeing from police in a cruiser has sufficient 'involvement' to allow recovery under the no-fault act [that] provides coverage for accidental bodily injury 'arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle' "). It is apparent from reading these cases that the panels used the word "involvement" in a generic sense, and their discussion of the degree of motor vehicle involvement is not controlling with regard to the proper construction of the specific

regarding property protection benefits. When interpreting the phrase, the panels adhered to our observations in *Heard*, while at the same time providing their own elaborations. A consistent theme in the Court of Appeals cases is the requirement that an "active link" exist between the injury and the use of the motor vehicle as a motor vehicle in order for the vehicle to be deemed "involved in the accident."[18]

Combining what we said in *Heard* with the guidance provided by the Court of Appeals, we hold that for a vehicle to be considered "involved in the accident" under § 3125, the motor vehicle, being operated or used as a motor vehicle, must actively, as opposed to passively, contribute to the accident. Showing a mere "but for" connection between the operation or use of the motor vehicle and the damage is not enough to establish that the vehicle is "involved in the accident." Moreover, physical contact is not required to establish that the vehicle was "involved in the accident," nor is fault a relevant consideration in the determination whether a vehicle is "involved in an accident." Finally, as already indicated by our discussion in part A, the concept of being "involved in the accident" under § 3125 encompasses a broader causal nexus between the use of the vehicle and the damage than what is required under § 3121(1) to show that the damage arose out of the ownership, operation, maintenance, or use of the motor vehicle as a motor vehicle.

The standard we adopt for construction of the phrase "involved in the accident" comports with

phrase "involved in the accident" as it appears in sections of the no-fault act.

[18] See *Michigan Mutual Ins v Farm Bureau,* n 17 *supra; Brasher,* n 17 *supra; Bachman,* n 17 *supra; Stonewall,* n 17 *supra.* Cf. *Hastings Mutual,* n 17 *supra.*

the basic criteria we endorsed in *Heard*. Consistent with what we said in *Heard*, the standard recognizes that the vehicle must be involved as a motor vehicle, and that a "but for" connection between the functional use of a motor vehicle and the injury is insufficient. Our specific holding in *Heard* was that a parked vehicle is considered "involved in the accident" only if one of the exceptions under § 3106(1)[19] applies. To the extent that our holding in *Heard* can be read to equate the "involved in the accident" standard with the "arising out of" standard, we now clarify that such comparisons are appropriate only when assessing whether a *parked vehicle* is "involved in the accident."

The meaning that we give to the phrase "involved in the accident" is also consistent with the structure of the no-fault act. The sections in the no-fault act that set forth the "arising out of" standard precede the act's mention of the "involved in the accident" standard in the case of both PIPs and property protection benefits. This order of appearance accords with our view regarding how to properly assess the liability of an insurer of an owner of a vehicle "involved in the accident" in multivehicle accident situations. First, it must be determined whether the damage arose

---

[19] Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

(b) Except as provided in subsection (2), the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.

(c) Except as provided in subsection (2), the injury was sustained by a person while occupying, entering into, or alighting from the vehicle. [MCL 500.3106; MSA 24.13106.]

out of the operation, ownership, maintenance, or use of a motor vehicle as a motor vehicle under § 3121(1). If this determination yields an affirmative conclusion, only then may it become necessary to determine whether the insureds' vehicles were "involved in the accident" under § 3125. The touchstone for liability under § 3125 is whether the vehicle is "involved in the accident." Section 3125 does not direct that the phrase "involved in the accident" be equated with the "arising out of the ownership, operation," etc., language in § 3121(1), even though it would have been easy for the Legislature to so indicate.

Finally, and most importantly, the construction we apply to the language "involved in the accident" is consistent with the Legislature's intent when it drafted the no-fault act. As we explained in *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978), cert den 442 US 934 (1979), *(After Remand),* 412 Mich 1105 (1982), "The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." Our construction will increase the possibility of "assured" and "adequate" reparation because the liability of *each* insurer in a multi-vehicle accident would not turn on whether the claimant could establish that the damage arose out of the ownership, operation, maintenance, or use of that particular insured's motor vehicle as a motor vehicle, but, rather, on the broader criterion that the insured vehicle be "involved in the accident," where the accident arose out of the use of *a* motor vehicle as a motor vehicle. While the causal nexus is more liberal under the "involved in the accident" standard, the standard's requirement that the vehicle be used as a motor vehicle, and that it make an active contribution to the happen-

ing of the accident, guarantees that insurers will not be held liable for property protection benefits simply because of a remote association between their insureds' vehicles and the accident. Finally, the standard would facilitate "prompt" reparation of benefits. Because the standard is straightforward in its application, insurers should be less likely to dispute liability among other insurers when their insureds' vehicles were "involved in the accident," and, instead, more likely to pay benefits to eligible victims of motor vehicle accidents in a timely fashion.

Applying our construction of the phrase "involved in the accident," we conclude that both the stolen vehicle and the police vehicle were "involved in the accident" under § 3125. The fact that neither vehicle made physical contact with the damaged building is not dispositive. The thief was using the stolen vehicle as a motor vehicle at the time of the accident, and this use directly led to the collision with the truck, and caused it to crash into and damage the building. Hence, the use of the stolen vehicle made an "active contribution" to the accident.

Likewise, the police officer was using his vehicle as a motor vehicle while he pursued the stolen vehicle. This active use perpetuated the stolen vehicle's flight, which, in turn, resulted in the collision with the other cars and the damage to the nearby property. We consider it to be unimportant that seconds before the multivehicle collision, the police vehicle "backed off and allowed more room between the patrol car and the susp[ect] veh[icle]" in an effort to deter the stolen vehicle from running the red light. Before slowing down, the police vehicle had actively pursued the stolen vehicle, and this pursuit, in part, obviously prompted the stolen vehicle to ignore the red light

and collide with the other vehicles. Those collisions directly resulted in the damage to the property. Thus, the use of the police vehicle as a motor vehicle had an active link with the damage, making it "involved in the accident" for purposes of § 3125, and notwithstanding the fact that the same use could not be said to have given rise to the damage for purposes of § 3121(1).

Because in this case the property damage arose out of the use of the truck as a motor vehicle under § 3121(1), none of the exceptions for liability applied under § 3123, and the Royal and Ferndale insureds' vehicles were "involved in the accident" under § 3125(1), we conclude that Royal and Ferndale are primarily liable to pay a share of the property protection benefits.

III

Royal argues that it should not be liable for coverage because a thief was driving the car at the time of the accident. Royal supports this argument by referring to *Lee v DAIIE,* 412 Mich 505, 509; 315 NW2d 413 (1982), in which this Court found that "it is the policy of the no-fault act that persons, not motor vehicles, are insured against loss." Relying on this statement, Royal insists that its insured did not have a role in the accident, and, therefore, Royal's duty to provide no-fault coverage was not triggered. We are not persuaded by Royal's argument.

As a general matter, the principle that we recognized in *Lee* is true. Moreover, the language in § 3125 is in accord because it directs that primary liability rests with "insurers of *owners* or *registrants* of vehicles involved in the accident." While we recognize the validity of the principle we stated in *Lee,* we are also cognizant that at various

places throughout the no-fault act, the Legislature chose to make the liability of the insurer turn on whether the *insured's vehicle* is "involved in the accident," rather than on the involvement of the *insured* in the accident. The primary insurer liability scheme for property protection benefits under §§ 3121(1) and 3125 is such an example.[20]

When this Court made the observation in *Lee,* the benefits at issue were PIPS. With regard to PIPS, the duty to provide coverage for the insured generally is not linked to the involvement of the insured's vehicle in the accident. As indicated, the insurer that is primarily liable for PIPS is the insurer of the injured person. The primary insurer's duty to provide PIPS is triggered when the insured is injured, and the injury arises out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle.[21] An insurer is primarily liable even though the insured does not own, operate, maintain, or use a vehicle involved in the accident—all that is required is that the insured suffer an injury in an accident involving *a* motor vehicle. *Lee v DAIIE* at 515.

In contrast, when, as in this case, the type of benefit sought is property protection benefits, the primary insurer's obligation to provide benefits is tied to the involvement of its insured's vehicle in the accident. As mentioned, the no-fault automobile insurer of the person who suffers property damage is *not* primarily liable. Rather, under § 3125, primary liability rests with the "insurers of owners or registrants of vehicles involved in the accident," where the accident arose out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. Sections 3121(1)

---

[20] For no-fault sections where the insurer's obligation to provide PIPS hinges on the involvement of the insured's motor vehicle in the accident, see §§ 3114(2)-(5) and 3115(1).

[21] See §§ 3105(1), 3114(1), and 3115(1).

and 3125 read in conjunction provide evidence that the primary insurer's duty to pay property protection benefits may be triggered whether or not its insured personally participated in the accident. This conclusion is supported by *Michigan Mutual Ins Co v Carson City Texaco, Inc,* 421 Mich 144; 365 NW2d 89 (1984), in which the insurer was held to be liable even though the insured did not personally participate in the property damage.

This Court stated:

> This case requires us to decide whether the insurer of a motor vehicle is responsible under the no-fault insurance act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.,* to pay benefits for property damage arising out of the maintenance of a motor vehicle in the course of a business of maintaining motor vehicles. We hold that such insurer is responsible. [*Id.* at 146.]

In this case, while Royal insures a vehicle owner, its primary liability turns on the involvement of the insured's vehicle in the accident. In accord with what we stated in *Lee,* we conclude that Royal, along with the other insurers of owners of vehicles "involved in the accident," bear primary responsibility for payment of property protection benefits under § 3125.

IV

We hold that Royal and Ferndale are primarily liable to pay a share of property protection benefits because their insureds' vehicles were "involved in the accident," which arose out of the use of a motor vehicle as a motor vehicle. We affirm the Court of Appeals decision regarding Royal's liability, but reverse its decision regarding the City of Ferndale's liability. We remand this case to the

trial court for proceedings consistent with this opinion.[22]

BRICKLEY, C.J., and LEVIN, BOYLE, RILEY, and MALLETT, JJ., concurred with CAVANAGH, J.

WEAVER, J., took no part in the decision of this case.

[22] We do not express any opinion at this time concerning the other issues raised by Ferndale in its brief submitted to this Court. See MCR 7.302(F)(4)(a).