*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUTO-OWNERS INSURANCE COMPANY,

      Plaintiff-Appellee,

v

HASTINGS MUTUAL INSURANCE COMPANY,
and STATE FARM INSURANCE COMPANY,

      Defendants-Appellees,

and

AUTO CLUB INSURANCE GROUP,

      Defendant/Third-Party Plaintiff-
      Appellant,

and

MEEMIC INSURANCE,

      Defendant,

and

ALLSTATE INSURANCE COMPANY,

      Defendant/Third-Party Plaintiff,

and

TRAVELERS INDEMNITY COMPANY,

      Third-Party Defendant.

UNPUBLISHED
December 16, 2024
11:14 AM

No.   365910
Macomb Circuit Court
LC No.   2020-001700-ND

-1-

HASTINGS MUTUAL INSURANCE COMPANY,

        Plaintiff-Appellee,

v

AAA, also known as AUTOMOBILE CLUB OF
MICHIGAN,

        Defendant-Appellant,

and

MEEMIC INSURANCE SERVICES
CORPORATION, TRAVELERS INDEMNITY
COMPANY, and ALLSTATE INSURANCE
COMPANY,

        Defendants,

and

STATE FARM MUTUAL AUTO INSURANCE
COMPANY,

        Defendant-Appellee.

No. 365911
Macomb Circuit Court
LC No. 2020-002606-NF

---

AUTO OWNERS INSURANCE COMPANY,

        Plaintiff-Appellee,

v

HASTINGS MUTUAL INSURANCE COMPANY,
STATE FARM INSURANCE COMPANY, and
MEEMIC INSURANCE,

        Defendants-Appellees,

and

AUTO CLUB INSURANCE GROUP,

        Defendant/Third-Party Plaintiff-
        Appellee,

No. 366271
Macomb Circuit Court
LC No. 2020-001700-ND

and

ALLSTATE INSURANCE COMPANY,

       Defendant/Third-Party Plaintiff-
       Appellant,

and

TRAVELERS INDEMNITY COMPANY,

       Third-Party Defendant.

---

HASTINGS MUTUAL INSURANCE COMPANY,

       Plaintiff-Appellee,

v

AAA, also known as AUTOMOBILE CLUB OF
MICHIGAN, and STATE FARM MUTUAL AUTO
INSURANCE COMPANY,

       Defendants-Appellees,

and

MEEMIC INSURANCE SERVICES
CORPORATION and TRAVELERS INDEMNITY
COMPANY,

       Defendants,

and

ALLSTATE INSURANCE COMPANY,

       Defendant-Appellant.

No. 366282
Macomb Circuit Court
LC No. 2020-002606-NF

---

Before: CAMERON, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

In these consolidated appeals,[1] in Docket Nos. 365910 and 365911, Auto Club Insurance Group ("Auto Club") appeals by right the trial court's orders granting summary disposition under MCR 2.116(C)(10) in favor of Hastings Mutual Insurance Company ("Hastings") and Auto-Owners Insurance Company ("Auto-Owners"). In Docket Nos. 366271 and 366282, Allstate Insurance Company ("Allstate") appeals the same order by delayed leave granted. Hastings and Auto-Owners brought subrogation actions seeking reimbursement from Auto Club, Allstate, and the insurers of other vehicles in relation to a multivehicle accident. Because the trial court erred when it granted summary disposition in favor of Hastings and Auto-Owners, we reverse the trial court's orders and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On April 24, 2019, John Kirkland was driving westbound on 26 Mile Road in Macomb County, Michigan, in a semitruck combination with a Peterbilt tractor pulling a Flo-boy trailer, insured by Hastings, when the front left tire of the semitruck blew out. Debris from the tire struck a Mercury Mariner insured by State Farm Insurance Company ("State Farm"). Kirkland lost control of the semitruck, which veered across the center line into the eastbound side of 26 Mile Road. The semitruck struck a Ford F-250 pickup truck insured by Meemic Insurance. The Ford F-250 subsequently struck a Honda Ridgeline sport utility vehicle Insured by Auto Club that had been stopped on Omo Road and waiting to turn onto 26 Mile Road. The semitruck left the road, traveled across Meade Cemetery, which was insured by Hastings, and crashed into Charles Vanfleteren's residence insured by Auto-Owners, which was destroyed. A portion of the cemetery property was also damaged. A Chevrolet Express van, insured by Allstate, was also traveling eastbound on 26 Mile Road when the driver saw the out-of-control semitruck in the eastbound lane. The driver slammed on his brakes and veered off the road, crashing into the mailbox post on Vanfleteren's property.

The insurers compensated their insureds for the property damage and brought suits in subrogation against the insurers of the vehicles involved in the April 24, 2019 accident. Hastings moved for summary disposition, arguing that there was no genuine issue of material fact that all vehicles the insurer defendants insured were "involved in the accident" within the meaning of § 3125 of the no-fault act, MCL 500.3101 *et seq*. Auto-Owners concurred in Hastings's motion. State Farm, Allstate, and Auto Club moved for summary disposition on the ground that there was no genuine issue of fact that the vehicles they insured were not "involved in the accident" because their vehicles had no effect on the events stemming from the semitruck's tire blowout. The trial court granted summary disposition in State Farm's favor concerning the Mercury Mariner that was struck by the debris, but otherwise granted summary disposition in Hastings's favor, and denied Allstate's and Auto Club's motions. The parties entered into a stipulated order allocating damages among the insurers, while reserving Allstate's and Auto Club's right to appeal. These appeals followed.

---

[1] *Auto-Owners Ins Co v Hastings Mut Ins Co*, unpublished order of the Court of Appeals, entered May 10, 2023 (Docket Nos. 365910 and 365911); *Auto-Owners Ins Co v Hastings Mut Ins Co*, unpublished order of the Court of Appeals, entered November 9, 2023 (Docket No. 366271); *Hastings Mut Ins Co v AAA*, unpublished order of the Court of Appeals, entered November 9, 2023 (Docket No. 366282).

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Eplee v Lansing*, 327 Mich App 635, 644; 935 NW2d 104 (2019). A trial court may grant summary disposition under MCR 2.116(C)(10) "when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "If the moving party properly supports his or her motion, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists." *Redmond v Heller*, 332 Mich App 415, 438; 957 NW2d 357 (2020).

Questions of statutory interpretation are reviewed de novo. *Padecky v Muskegon Charter Twp*, 343 Mich App 186, 190; 997 NW2d 229 (2022). "Our fundamental obligation when interpreting a statute is to discern the legislative intent that may reasonably be inferred from the words expressed in the statute." *Wilcox v Wheatley*, 342 Mich App 551, 557; 995 NW2d 594 (2022) (quotation marks and citation omitted). For that reason, "we give effect to every word, phrase, and clause in a statute, and consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Id*. (quotation marks and citation omitted).

## III. DOCKET NOS. 365910 AND 365911

In Docket Nos. 365910 and 365911, Auto Club argues that the trial court erred when it concluded that it was not entitled to summary disposition in its favor because the Honda Ridgeline was not involved in the accident within the meaning of MCL 500.3125. We agree.

We begin with the language of the relevant statutes. MCL 500.3121 states:

> (1) Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 3125, and 3127. However, accidental damage to tangible property does not include accidental damage to tangible property, other than the insured motor vehicle, that occurs within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles.

> (2) Property protection insurance benefits are due under the conditions stated in this chapter without regard to fault.

> (3) Damage to tangible property consists of physical injury to or destruction of the property and loss of use of the property so injured or destroyed.

> (4) Damage to tangible property is accidental, as to a person claiming property protection insurance benefits, unless it is suffered or caused intentionally by the claimant. Even though a person knows that damage to tangible property is substantially certain to be caused by his or her act or omission, he or she does not cause or suffer such damage intentionally if he or she acts or refrains from acting for the purpose of averting injury to

-5-

any person, including himself or herself, or for the purpose of averting damage to tangible property.

> (5) Property protection insurance benefits consist of the lesser of reasonable repair costs or replacement costs less depreciation and, if applicable, the value of loss of use. However, property protection insurance benefits paid under 1 policy for damage to all tangible property arising from 1 accident shall not exceed $1,000,000.00.

In turn, MCL 500.3125 states that "[a] person suffering accidental property damage shall claim property protection insurance benefits from insurers in the following order of priority: insurers of owners or registrants of vehicles *involved in the accident*; and insurers of operators of vehicles *involved in the accident*." (Emphasis added.) Auto Club's obligation to reimburse Auto-Owners and Hastings depends, therefore, on whether the Honda Ridgeline was "involved in the accident" within the meaning of MCL 500.3125.

In *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 28-29; 528 NW2d 681 (1995), the Michigan Supreme Court identified three requirements that must be met to trigger a no-fault insurer's liability to pay property protection benefits:

> 1. There has been "accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle . . . ." Section 3121(1).

> 2. The facts do not implicate any of the statutorily enumerated exceptions for property protection liability. Section 3123.

> 3. The insurer insures the owner of a vehicle "involved in the accident," in which case the insurer will be primarily liable; or, the insurer insures the operator of a vehicle "involved in the accident," in which case the insurer will be secondarily liable. Section 3125.

As stated, only the third *Turner* requirement is at issue in this appeal.

In *Turner*, the Supreme Court analyzed the no-fault act's provisions for damage to property in a case in which an automobile thief caused a multivehicle accident while driving a stolen vehicle with a police car in pursuit. *Id*. at 25-26. The stolen vehicle was owned by an individual named Columbus Bone. *Id*. at 25. The thief drove Bone's car into an intersection in disregard of a red light, causing a multivehicle collision. *Id*. at 26.

> First, [Bone's] vehicle crashed into a pickup truck driven by its owner, Clinton Durfee, on eastbound Nine Mile. Next, the vehicle collided with a truck driven by its owner, Randy Leroy Lemons, also on eastbound Nine Mile. The impact of this crash caused the truck to split in two. The rear portion of the truck smashed into a nearby building on the northeast corner of Woodward and Nine Mile. The truck's gas tank exploded, the building caught on fire, and both the building and its contents were destroyed. The police vehicle did not collide with any of the other vehicles, nor did it incur any damage. [*Id*.]

The insurers and owners of the building sought property protection benefits from the insurers of the truck, the pickup truck, the stolen vehicle, and the police vehicle. *Id*. The insurers of the truck and the pickup truck conceded liability for a share of payable property protection benefits. *Id*. Royal Insurance Company, the insurer of Bone's vehicle, denied liability on the ground that the damage did not arise "out of the ownership, operation, maintenance, or use of its insured's motor vehicle as a motor vehicle because a thief had been operating the vehicle when the accident occurred." *Id*. at 26. The city of Ferndale, which self-insured the police vehicle, argued that the police car was not "involved in" the accident because it was stopped at a red light and not actively pursuing the stolen vehicle at the time of the collision. *Id*. at 26-27.

The Supreme Court began its analysis by concluding "that the property damage arose out of the use of a motor vehicle as a motor vehicle" because "the destruction of the building arose out of the use of the *truck* as a motor vehicle." *Id*. at 32. The Court found a direct relationship between the operation of the truck and the property damage because the truck crashed into the building, the truck's gas tank caused the fire, and "[s]econds before the accident, the driver of the truck was using it for transportation purposes—an activity that is directly related to [the truck's] character as a motor vehicle." *Id*. at 32 (quotation marks and citation omitted). The Court concluded "that the relationship between the use of the truck and the damage was direct for purposes of no-fault law," and deemed irrelevant "the fact that at the precise moment the truck smashed into the building it was not being used as a motor vehicle because it was cut in half." *Id*. The Court analogized this fact to a hypothetical accident in which a vehicle that "was being used for transportation purposes seconds before colliding with another vehicle, causing the first vehicle to roll over consecutively and ultimately to hit a pedestrian." *Id*. In this hypothetical situation, "[t]he fact that the car was rolling, rather than being used as a motor vehicle, seconds before hitting the pedestrian likewise would lead us to conclude that the injury arose out of the use of the first vehicle as a motor vehicle." *Id*.

The Court rejected the arguments that the damage "cannot be said to have arisen out of the use of their particular insured's vehicle as a motor vehicle." *Id*. at 33. Once it is established that damage arose out of the ownership, operation, maintenance, or use of a motor vehicle, "the damage fits within the purview of the no-fault statute, and the claimant is entitled to no-fault coverage." *Id*. at 34. The Court stated:

> In other words, in this multivehicle accident, even if we were to accept Royal and Ferndale's claim that the damage did not arise out of the use of their insureds' vehicles as motor vehicles, Royal and Ferndale are not necessarily relieved of liability. Because the damage arose out of the use of a motor vehicle (the truck) as a motor vehicle, and because the insureds' vehicles had more than a random association with the accident scene, Royal and Ferndale may be primarily liable for property protection benefits. Whether they in fact will be found liable will depend on the outcome of analyses under §§ 3123 and 3125. [*Id*. at 35.]

The Court further held that Ferndale's and Royal's insureds were "involved in the accident" according to its interpretation of this phrase in § 3125. *Id*. at 37. The Court referred to its construction of the phrase "involved in the accident" in *Heard v State Farm Mut Auto Ins Co*, 414 Mich 139; 324 NW2d 1 (1982):

In construing the phrase in *Heard*, we observed that "[w]hether a vehicle is 'involved' cannot be determined by abstract reasoning or resort to dictionary definitions. It depends on the meaning derived from the purpose and structure of the no-fault act." For a vehicle to have been "involved in the accident" requires, at a minimum, that the vehicle be used as a motor vehicle at the time of the accident. Further, a vehicle does not fit within the category of vehicles "involved in the accident" merely on a showing of a "but for" connection between the functional use of the motor vehicle and the injury—even where a "but for" standard is narrowed by interposing a requirement of physical proximity between the use of the vehicle as a vehicle and the injury or damage. [*Turner*, 448 Mich at 37-38 (citation omitted).]

The Court noted that "several panels of the Court of Appeals also have examined the import of the phrase 'involved in the accident" in the context of various no-fault sections" other than the property protection sections. *Id*. at 38-39.

The Supreme Court recognized that a "consistent theme" in this Court's decisions interpreting the phrase "is the requirement that an 'active link' exist between the injury and the use of the motor vehicle as a motor vehicle in order for the vehicle to be deemed 'involved in the accident.' " *Id*. at 39. Considering this Court's jurisprudence in conjunction with *Heard*'s statements, the Court held "that for a vehicle to be considered 'involved in the accident' under § 3125, the motor vehicle, being operated or used as a motor vehicle, must actively, as opposed to passively, contribute to the accident." *Id*. "Showing a mere 'but for' connection between the operation or use of the motor vehicle and the damage is not enough to establish that the vehicle is 'involved in the accident.' " *Id*. "[P]hysical contact is not required to establish that the vehicle was 'involved in the accident,' nor is fault a relevant consideration in the determination whether a vehicle is 'involved in an accident.' " *Id*. Additionally, "the concept of being 'involved in the accident' under § 3125 encompasses a broader causal nexus between the use of the vehicle and the damage than what is required under § 3121(1) to show that the damage arose out of the ownership, operation, maintenance, or use of the motor vehicle as a motor vehicle." *Id*.

The Court concluded that both the stolen vehicle and the police vehicle were "involved in the accident" under MCL 500.3125. *Turner*, 448 Mich at 42. The stolen vehicle was involved in the accident because "[t]he thief was using the stolen vehicle as a motor vehicle at the time of the accident, and this use directly led to the collision with the truck, and caused it to crash into and damage the building." *Id*. at 42. The police vehicle was involved because the "officer was using his vehicle as a motor vehicle while he pursued the stolen vehicle." *Id*. The officer's use of the vehicle "perpetuated the stolen vehicle's flight, which, in turn, resulted in the collision with the other cars and the damage to the nearby property." *Id*. at 42. In pursuing the stolen vehicle, the police vehicle "prompted the stolen vehicle to ignore the red light and collide with the other vehicles," with the direct result of damaging the property. *Id*. at 42-43. The police vehicle was therefore involved in the accident. *Id*. at 42-43.

In the present case, the subject vehicle—the Honda Ridgeline—was struck by another vehicle while the Honda was stopped at a light, but did not influence the course of events or cause any of the property damage. Auto Club contends that these circumstances place the Honda outside of the statutory language of being "involved in the accident" because the vehicle did not have "more than a random association with the accident scene" and there was no active link "between the injury and the use of a motor vehicle as a motor vehicle." *Turner*, 448 Mich at 35, 39. This argument is consistent with the *Turner* analysis, which requires active, rather than passive, contribution to the accident when determining

the liability of insurers of vehicles under MCL 500.3125. *Turner*, 448 Mich at 39. Moreover, "a 'but for' connection between the functional use of a motor vehicle and the injury" is not enough to establish involvement of a vehicle, "even where a 'but for' standard is narrowed by interposing a requirement of physical proximity between the use of the vehicle as a vehicle and the injury or damage." *Id*. at 38, 40. Hastings and Auto-Owners have failed to establish any "but for" connection because there is no evidence that the accident would have happened differently if the Honda had not been present—indeed, it was damaged in the accident in the same way the Mercury Mariner was. *Turner*, therefore, controls the outcome of this case, and the trial court erred when it concluded that the Honda was "involved in the accident."

### III.  DOCKET NOS. 366271 AND 366282

In Docket Nos. 366271 and 366282, Allstate argues that the Chevrolet Express van it insured was not "involved in the accident" because the collision with the mailbox to avoid the semitruck established a separate accident from the accident that resulted in the destruction of Vanfleteren's home and damage to the cemetery.  We agree.

In the separate crash report documenting the mailbox collision, the accident involving the Chevrolet was caused because the driver was trying to "avoid a collision" with the Peterbilt Semitruck. The driver "slammed on his breaks, causing him to leave the roadway" and strike the mailbox.  In other words, the driver of the Chevrolet was not in control of the vehicle as it attempted to avoid the accident, causing him to strike the mailbox.  Thus, like the Honda Ridgeline, the involvement of the Chevrolet was nothing "more than a random association with the accident scene" and there was no active link "between the injury and the use of a motor vehicle as a motor vehicle." *Turner*, 448 Mich at 35, 39.  The Chevrolet did not cause damage to the cemetery or residence (other than the mailbox), nor was there any evidence that the Chevrolet's path caused any other vehicles to become involved in the accident.  Accordingly, the trial court erred when it concluded that the Chevrolet was "involved in the accident" for purposes of MCL 500.3125.[2]

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.  Appellants, as the prevailing parties, may tax costs.  MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett

---

[2] Because we conclude that the Chevrolet was not involved in the accident, we need not address Allstate's additional arguments concerning the reasons why the trial court's order should be reversed.