AUTO CLUB INSURANCE ASSOCIATION v STATE AUTOMOBILE
MUTUAL INSURANCE COMPANY

Docket No. 239489. Submitted July 8, 2003, at Detroit. Decided September
2, 2003, at 9:00 A.M.

Auto Club Insurance Association (ACIA) brought an action in Wayne
Circuit Court, Daphne M. Curtis, J., against State Automobile
Mutual Insurance Company (SAMIC), seeking a declaration that SAMIC
was required to pay a pro rata share of personal protection insur-
ance benefits pursuant to MCL 500.3114, because SAMIC's insured's
vehicle was involved in an accident with a motorcyclist. ACIA's
insured's pickup truck was last in a line of vehicles stopped in a
construction zone when it was struck from behind by a motorcycle
driven by the claimant. ACIA alleged that after striking its insured's
pickup truck, the motorcycle and its driver then hit SAMIC's
insured's vehicle, which was directly in front of the pickup truck,
and that this impact contributed to the motorcyclist becoming sep-
arated from his cycle, and sliding into oncoming traffic. SAMIC
moved for summary disposition, arguing that there was no genuine
issue of material fact that the motorcycle had not struck SAMIC's
insured's vehicle, and that even if it had, its insured's vehicle was
not "involved" in the accident for purposes of § 3114. The court
granted the motion. ACIA appealed by leave granted.

The Court of Appeals *held*:

1. The trial court erred in granting summary disposition because
ACIA established a genuine issue of material fact through the deposi-
tion testimony of an eyewitness to the accident that the motor-
cyclist struck SAMIC's insured's vehicle after striking ACIA's insured's
pickup truck. Although the witness's testimony was contradictory,
it was sufficient to raise an issue of fact. Summary disposition can-
not be granted when the truth of a material factual assertion
depends on the credibility of a witness.

2. The collision between the motorcycle and SAMIC's insured's
vehicle rendered that vehicle "involved" in the accident for pur-
poses of § 3114, requiring that SAMIC pay a pro rata share of per-
sonal protection insurance benefits. The decisions cited by SAMIC
are factually distinguishable because in those cases there was no
physical contact between the claimant or the claimant's vehicle and

the vehicle alleged to be "involved." Here, the testimony is that the motorcyclist struck ACIA's insured's pickup truck and then struck SAMIC's insured's vehicle. Thus, both vehicles were "involved" in the accident. Although SAMIC's insured's vehicle did nothing to actively contribute to the motorcyclist's accident, the relevant question is whether a vehicle is involved, not whether the involvement was innocent.

Reversed and remanded for further proceedings.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — VEHICLES — INVOLVEMENT IN ACCIDENTS INVOLVING MOTORCYCLES.

A vehicle is involved in an accident with a motorcycle for purposes of requiring that vehicle's insurer to pay a pro rata share of personal protection insurance benefits to the operator or passenger of the motorcycle if the vehicle came into contact with the injured person or the injured person's motorcycle, although the vehicle did not actively contribute to the accident. (MCL 500.3114[5], [6].)

*Schoolmaster, Hom, Killeen, Siefer & Arene* (by *Renee Ballard*) and *John A. Lydick,* of counsel for the plaintiff.

*Condit, McGarry & Schloff, P.C.* (by *Michael F. Condit*), for the defendant.

Before: HOEKSTRA, P.J., and FITZGERALD and WHITE, JJ.

WHITE, J. Plaintiff Auto Club Insurance Association (ACIA) appeals by leave granted the circuit court's order granting summary disposition in favor of defendant State Automobile Mutual Insurance Company (SAMIC) in this action for declaratory relief involving no-fault insurance. ACIA argues it presented sufficient evidence that the vehicle insured by SAMIC was involved in the collision with the injured claimant's motorcycle to withstand summary disposition on the question whether SAMIC is obligated to pay a pro rata share of the motorcyclist's no-fault personal injury

protection (PIP) benefits. We agree, and reverse and remand for further proceedings.

I

This case arises out of a motorcycle accident that occurred on northbound M-37, in a construction zone. A line of approximately five to six vehicles was stopped where a flagperson was holding a stop sign. A vehicle driven by Donald Karel and insured by SAMIC pulled up and stopped behind the northbound line of vehicles, a pickup truck, driven by Debra Embury and insured by ACIA, pulled up and stopped behind Karel. A northbound motorcycle, driven by Robert Bateman and traveling at a high rate of speed, was unable to stop behind the line of vehicles and collided with Embury's pickup truck. The motorcycle slid down the driver's side of Embury's pickup truck and eventually slid into the southbound lane of traffic. It is disputed whether Bateman also hit Karel's vehicle before sliding into the oncoming lane of traffic. Bateman sustained severe injuries.

Plaintiff ACIA paid PIP benefits to Bateman for the injuries he sustained in the accident. ACIA then commenced this action seeking declaratory relief and recoupment from SAMIC for PIP benefits paid to Bateman on the basis that Bateman also struck Karel's car. SAMIC moved for summary disposition, arguing that Karel's vehicle was not struck by Bateman. SAMIC also argued that even if Bateman struck Karel's vehicle, under *Turner v Auto Club Ins Ass'n*, 448 Mich 22; 528 NW2d 681 (1995), Karel's vehicle was still not "involved" in the accident to the extent that SAMIC is obligated to pay no-fault benefits. ACIA responded to the motion by submitting evidence that Bateman

struck Karel's vehicle and by arguing that Karel's vehicle was therefore involved in the accident. The circuit court granted SAMIC's motion.

II

On appeal, a circuit court's grant of summary disposition is reviewed de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. *Id.* Summary disposition is appropriate when, except for the amount of damages, there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10). When deciding a motion under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999).

MCL 500.3105(1) provides:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle[1] as a motor vehicle, subject to the provisions of this chapter.

MCL 500.3114(5) and (6) provide:

---

[1] For purposes of the no-fault act, a motorcycle is not defined as a "motor vehicle." MCL 500.3101(2)(e). For a motorcyclist to be entitled to no-fault PIP benefits, the motorcycle accident must involve a motor vehicle. MCL 500.3105; *Autry v Allstate Ins Co*, 130 Mich App 585, 590; 344 NW2d 588 (1983).

(5) A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:

(a) The insurer of the owner or registrant of the motor vehicle involved in the accident.

(b) The insurer of the operator of the motor vehicle involved in the accident.

(c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.

(d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.

(6) If 2 or more insurers are in the same order of priority to provide personal protection insurance benefits under subsection (5), an insurer paying benefits due is entitled to partial recoupment from the other insurers in the same order of priority, together with a reasonable amount of partial recoupment of the expense of processing the claim, in order to accomplish equitable distribution of the loss among all of the insurers.

The question is whether Karel's vehicle was "involved" in the accident within the meaning of MCL 500.3114(5). SAMIC claims that Karel's car was not "involved" in the accident because (1) Bateman did not collide with Karel's car, and (2) even if Bateman did collide with Karel's car, Karel's car played a passive role in the accident, and a passive role is not enough to constitute involvement under *Turner*, *supra*.

A

The first question, whether Bateman collided with Karel's car, is a question of fact. The party moving for summary disposition has the initial burden of sup-

porting its position by affidavits, depositions, or other documentary evidence. *Smith v Globe Life Ins Co*, 460 Mich 446, 455; 597 NW2d 28 (1999). The party opposing the motion then has the burden of showing by evidentiary materials that a genuine issue of disputed fact exists, *id.*, and the disputed factual issue must be material to the dispositive legal claim, *State Farm Fire & Cas Co v Johnson*, 187 Mich App 264, 267; 466 NW2d 287 (1990). While SAMIC concedes in its brief that for purposes of this appeal this Court should assume that the accident happened as asserted by ACIA, it nevertheless attacks the sufficiency of ACIA's showing in this regard. We therefore address whether ACIA established a genuine issue regarding whether Bateman hit Karel's vehicle.

SAMIC, in support of its motion below, submitted excerpts from Embury's deposition and Karel's affidavit. Karel stated in his affidavit that Bateman did not hit his car and that the damage to his taillight and windshield was caused by flying debris. Embury, whose pickup truck was struck by Bateman, testified at her deposition that she did not see whether Bateman hit Karel's car in front of her. ACIA responded by presenting the deposition testimony of Wayne Schipper, a witness to the accident. Schipper testified:

*Q.* So do you recall at what point the motorcyclist left his bike?

*A.* After hitting the second [Karel's] car.

*Q.* After hitting the second car?

*A.* Yep.

\*     \*     \*

*Q.* But did you see the bike come in contact with the second car?

*A.* Yes, I did.

\*    \*    \*

*Q.* We don't want you to guess or speculate. We want to know exactly what you saw, and if you're not sure, tell us you're not sure.

*A.* I'm almost positive he was—was on the bike when it hit the second car and that's what made it—that's when he flew off and the bike went sliding. And if it hit another vehicle, a third vehicle, as you were saying something about a third vehicle, that, I didn't see because I took off.

\*    \*    \*

*A.* . . . If this was the second vehicle in line from where I was, it looked like he caught the back corner panel. (Pointing.) Right here. And that's when—because his bike, his wheel, went like that (indicating) and he shot off.

*Q.* I'm going to hand you Exhibit 2, which is kind of more of a close-up of the same vehicle. The driver of the vehicle and passenger of the vehicle got out, inspected the car immediately after the accident because they did hear a noise—

*A.* Right.

*Q.* —and what they observed was a broken taillight, apparently because some debris had—

*A.* No. No, he did—he did hit the second vehicle—or the bike did come into contact with the second vehicle.

*Q.* Okay. The bike did, but you're not—once again, you're not sure—

*A.* At that time that is when he flew off, when he hit this—I'm—I'm almost positive that that's when he got separated from the bike, after he hit the second vehicle.

\*    \*    \*

*Q.* Okay. So you did not see any dents at all to the second vehicle?

*A.* Not visually, no. I seen [sic] the bike made contact with the second vehicle though.

*Q.* Was it a glancing blow or did it hit it pretty darn hard?

*A.* With a motorcycle a pebble can throw you. So I couldn't tell you if it was a hard blow—it was hard enough to send him sailing, send the guy sailing.

In addition to Schipper's testimony, Sergeant J. D. Flegel, the state trooper who responded to the accident and who prepared the police report, testified at his deposition that certain damage to Karel's vehicle and the skid marks leading to Karel's car led him to believe that Karel's car was involved in the accident.[2]

Although Schipper's testimony[3] was contradictory in part, it was sufficient to raise an issue of fact regarding whether there was a collision between Bateman and Karel's car.[4] Defendant argues that Schipper is not believable because of the contradictions in his deposition testimony. However, when the truth of a material factual assertion depends on the credibility of a witness, a genuine factual issue exists

[2] SAMIC argues that Flegel's testimony is inadmissible hearsay because it was based on witness statements, and cites *Miller v Hensley*, 244 Mich App 528; 624 NW2d 582 (2001). However, Flegel's testimony, summarized above, is based on what Flegel observed at the scene of the accident and not on statements of witnesses; therefore it is not hearsay.

[3] SAMIC asserts that Schipper's deposition testimony is inadmissible because it was never filed with the Wayne Circuit Court Clerk's Office. The issue of admissibility at trial was never raised before the trial court and is not argued and supported on appeal. With regard to this Court's consideration of the testimony, the discussion on the record at the motion hearing makes it clear that ACIA's response to SAMIC's motion for summary disposition, which included the relevant excerpts of Shipper's deposition testimony, was filed with the trial court and was reviewed by the trial court before it ruled on the motion. Thus, it is properly part of the record and will be considered on appeal. *Spikes v Banks*, 231 Mich App 341, 343 n 1; 586 NW2d 106 (1998).

[4] SAMIC also asserts that the affidavit of the senior claims representative for ACIA, Elizabeth Simmons, is inadmissible hearsay and cannot be used to create a genuine issue of material fact. Simmons's affidavit states that Embury related to Simmons that Karel had told Embury that his vehicle was hit by Bateman. As Schipper's testimony alone is sufficient to establish a disputed issue of fact, we need not consider Simmons's testimony.

and summary disposition may not be granted. *Metropolitan Life Ins Co v Reist*, 167 Mich App 112, 121; 421 NW2d 592 (1988).

B

Having determined that the testimony offered below was sufficient to raise a factual issue regarding whether Bateman collided with Karel's car, we must address whether such a collision is sufficient to "involve" Karel's car in the accident under MCL 500.3114(5). Samic heavily relies on *Turner, supra,* in arguing that, because Karel's vehicle did not actively contribute to the accident, it was not "involved" in the accident. Defendant also cites *Michigan Mut Ins Co v Farm Bureau Ins Group*, 183 Mich App 626; 455 NW2d 352 (1990), *Brasher v Auto Club Ins Ass'n*, 152 Mich App 544; 393 NW2d 881 (1986), *Bachman v Progressive Cas Ins Co*, 135 Mich App 641; 354 NW2d 292 (1984), and *Stonewall Ins Group v Farmers Ins Group*, 128 Mich App 307; 340 NW2d 71 (1983).

*Turner, supra,* involved a claim for property protection benefits for damages sustained by a building during a multivehicle accident. The accident occurred when a suspected stolen vehicle being pursued by the police ignored a red light, struck a pickup truck, and collided with another truck that crashed into the building, causing the building to catch fire. The issue was whether the police car and the stolen car were involved in the accident for purposes of MCL 500.3125.[5] The Court held:

---

[5] While *Turner, supra,* considered the language of § 3125 with regard to the definition of the phrase "involved in the accident," the phrase should be construed consistently throughout the no-fault act. *Michigan*

[F]or a vehicle to be considered "involved in the accident" under § 3125, the motor vehicle, being operated or used as a motor vehicle, must actively, as opposed to passively, contribute to the accident. Showing a mere "but for" connection between the operation or use of the motor vehicle and the damage is not enough to establish that the vehicle is "involved in the accident." Moreover, physical contact is not required to establish that the vehicle was "involved in the accident," nor is fault a relevant consideration in the determination whether a vehicle is "involved in an accident." [*Turner, supra* at 39.]

The Court found that both the stolen vehicle and the police car were involved in the accident although there was no physical contact between these vehicles and the damaged building. The stolen vehicle was "involved" because it collided with the truck, causing the truck to crash into and damage the building, and the police car was "involved" in the accident because it prompted the stolen car's flight that resulted in the collision and property damage. *Id.* at 42-43.

SAMIC argues that, because Karel's car was passively waiting to proceed through the construction zone and did not actively contribute to the accident in any way, Karel's car was not involved in the accident under § 3114(5) according to *Turner, supra.* However, *Turner, supra,* defined "involved in the accident" in the context of two vehicles that were not physically involved in the actual collision that caused the property damage. The assumption in *Turner, supra,* was that the vehicles that came into contact with the property that was damaged *were* involved in the acci-

*Mut Ins Co, supra* at 636; *Wright v League Gen Ins Co,* 167 Mich App 238, 245; 421 NW2d 647 (1988).

dent and their insurers were liable to pay property protection benefits.

The other cases SAMIC cites also involve determinations whether vehicles that had no contact with the injured person or the injured person's vehicle were involved in the accidents. In *Michigan Mut Ins Co, supra,* the issue was whether a school bus was involved in an accident in which a boy was hit by a driver of another vehicle after leaving the school bus and while walking across the street under the protection of the warning flashers of the bus. The Court found that the bus was not involved in the accident because there was nothing that the bus did that even arguably caused the accident. *Id.* at 637. In *Brasher, supra,* the issue was whether a vehicle was involved in an accident with a pedestrian when the vehicle did not strike the pedestrian and did not strike the car that hit the pedestrian, but was hit by another car *after* that car hit the car that hit the pedestrian. The Court found that the vehicle was not involved in the accident because it did not contribute to the accident and was merely stopped at a red light. *Brasher, supra* at 546-547. *Brasher* would be analogous if ACIA was arguing that Karel's vehicle was involved because Embury hit it after Bateman hit her vehicle, or because Bateman's motorcycle hit Karel's vehicle *after* Bateman left the motorcycle. However, ACIA is not advancing such theories, and asserts that the Karel vehicle was involved because Bateman and his motorcycle hit the vehicle. In *Bachman, supra,* the question was whether a vehicle, which was hit by the airborne body of a motorcycle passenger, was involved in the accident with the driver of the motorcycle when there was no contact between the motor-

cycle and its driver and the vehicle.[6] The Court found that the vehicle was not involved in the accident because the vehicle was not involved in any activity that contributed to the happening of the accident. *Id.* at 644. Finally, in *Stonewall, supra* the question was whether a car waiting to complete a left hand turn was involved in an accident that occurred when a second car swerved to avoid the first car and hit a bicyclist. The Court found that the first car was not involved in the accident because it was not moving into the second car's lane, was not blocking the second car's lane, and because its driver was not "doing anything other than probably turning her wheels and having her signal on." *Id.* at 310. None of these cases hold that a vehicle that actually collided with the injured person, or the injured person's vehicle while occupied by the person, was not "involved" in the accident.

While no case clearly states that physical contact between the injured party and a vehicle renders the vehicle "involved" in the accident under MCL 500.3114(5) and obligates the insurer to pay personal injury protection benefits, there is no case where there was physical contact between the injured party and a vehicle where the vehicle was found not to be involved.[7] It appears that a question is raised regard-

---

[6] In *Bachman, supra,* it was assumed that the car struck by the motorcycle was involved in the accident and the insurer of the car was obligated to pay the personal injury protection benefits of the driver of the motorcycle even though that car was passively waiting in a left turn lane when struck by the motorcycle. Also, there was no dispute over the fact that the insurer of the vehicle voluntarily paid one-half of the passenger's no-fault benefits, where the passenger struck the vehicle.

[7] In a pre-*Turner* case, a motorcyclist attempted to avoid hitting a car by pushing off the left rear tire with his foot and subsequently crashed into a wall. This Court found that the car was involved in the accident,

ing involvement, and analysis under *Turner* becomes necessary, only when there is no physical contact between the injured party and the vehicle.

We reject SAMIC's argument that even if Bateman hit Karel's car before sliding into the opposing lane of traffic, the Karel vehicle was still not involved because it was passively waiting to pass through the construction zone and did not contribute to the accident in any way. If the facts are as ACIA alleges, both Karel's and Embury's vehicles stand in the same relation to the accident. There is no basis on which to distinguish the two vehicles. Both vehicles were at a standstill waiting for traffic to clear a construction zone when Bateman collided with them. Nevertheless, fault or passivity has no place in the analysis. The question is whether the vehicle was *involved*, not whether the involvement was innocent. Regardless of the driver's lack of fault, or the vehicle's lack of movement,[8] the Embury vehicle contributed to the accident and became involved when it was struck by Bateman. The Karel vehicle, if hit by Bateman, would also have contributed to the accident and become involved when Bateman hit it and separated from his motorcycle or skidded into the opposing lane of traffic. To conclude that the Embury and Karel vehicles

---

although the car did not actively contribute to the accident—it was legally traveling in its own lane when the damaging events unfolded. *Dep't of Social Services v Auto Club Ins Ass'n*, 173 Mich App 552; 434 NW2d 419 (1988).

[8] The Legislature has determined under what circumstances the insurer of a nonmoving vehicle will be relieved from no-fault liability. MCL 500.3106 declares that accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle except under certain circumstances. It is not argued that the Karel vehicle was a parked vehicle under § 3106. Thus, the fact that the vehicle was simply standing still is irrelevant.

were not involved because their contribution to the accident was passive rather than active, although there was an actual collision between these vehicles and the motorcycle, would redefine the concept of involvement to exclude a large category of vehicles that was previously regarded, apparently even by insurers themselves,[9] as being involved in the accidents. We decline to do so.

In sum, we conclude that there was a genuine issue of material fact whether Bateman struck the Karel vehicle, and that if he did, the Karel vehicle was "involved" under MCL 500.3114(5), and both ACIA and SAMIC would be equally responsible for paying PIP benefits under MCL 500.3114(6).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[9] ACIA concedes that the Embury vehicle was "involved," and SAMIC asserts that ACIA is unquestionably liable for Bateman's PIP benefits on the basis of the Embury vehicle's involvement.